# **<u>EXHIBIT 1</u>**

| CIVIL ACTION COVER SHEET | DOCKET NUMBER 2681CV01172 | Massachusetts Trial Court Superior Court |
|---|---|---|
| | | **COUNTY** Middlesex Superior Court (Lowell) |

| **Plaintiff** Harrison Copley Mayotte | **Defendant:** Southern New Hampshire University |
|---|---|
| ADDRESS: 292 Main Street | ADDRESS: 2500 N River Road |
| PO Box 6 | Manchester, NH 03106 |
| Townsend, MA 01469 | |
| **Plaintiff Attorney:** | **Defendant:** Loan Science, LLC |
| ADDRESS: | ADDRESS: 3520 Executive Center Drive |
| | Suite 150 |
| | Austin, TX 78731 |
| BBO: | |
| **Plaintiff Attorney:** | **Defendant:** Loan Science Management, LLC |
| ADDRESS: | ADDRESS: 3520 Executive Center Drive |
| | Suite 150 |
| | Austin, TX 78731 |
| BBO: | |

## TYPE OF ACTION AND TRACK DESIGNATION (see instructions section on next page)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| BE1 | Fraud, Business Torts, etc.; FDCPA | A | ☒ YES ☐ NO |

*If "Other" please describe: _____

**Is there a claim under G.L. c. 93A?**
☒ YES    ☐ NO

**Is there a class action under Mass. R. Civ. P. 23?**
☒ YES    ☐ NO

### STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. (Note to plaintiff: for this form, do not state double or treble damages; indicate single damages only.)

**RECEIVED**

**TORT CLAIMS**

5/1/2026

A. Documented medical expenses to date

    1. Total hospital expenses _____

    2. Total doctor expenses _____

    3. Total chiropractic expenses _____

    4. Total physical therapy expenses _____

    5. Total other expenses (describe below) _____

    _____

                                    Subtotal (1-5): _____ $0.00

B. Documented lost wages and compensation to date _____

C. Documented property damages to date _____

D. Reasonably anticipated future medical and hospital expenses _____

E. Reasonably anticipated lost wages _____

F. Other documented items of damages (describe below) _____

Statutory damages under 15 U.S.C. 1692k against Loan Science & Loan Science Management; actual damages under c. 93A § 9; disgorgement of payments procured by deception; declaratory relief; class-wide damages. Single damages reasonably >$50,000.

                                    TOTAL (A-F): _____ $0.00

G. Briefly describe plaintiff's injury, including the nature and extent of the injury:

Harm under M.G.L. c. 93A § 9 arising from defendants' contradictory and unlawful debt-collection communications; payments procured under economic compulsion subject to disgorgement; statutory injury per FDCPA per-violation damages.harm under M.G.L. c. 93A

### CONTRACT CLAIMS

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | | |
| | Total | |

| Signature of Attorney/Self-Represented Plaintiff: X  /s/ Harrison C. Mayotte | Date: 5/1/2026 |
|---|---|

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

**CERTIFICATION UNDER S.J.C. RULE 1:18(5)**

I hereby certify that I have complied with requirements of Rule 5 of Supreme Judicial Court Rule 1:18: Uniform Rules on Dispute Resolution, requiring that I inform my clients about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

| Signature of Attorney: X | Date: |
|---|---|

# CIVIL ACTION COVER SHEET INSTRUCTIONS —
## SELECT A CATEGORY THAT BEST DESCRIBES YOUR CASE*

### AC Actions Involving the State/Municipality †*

| | | |
|---|---|---|
| AA1 | Contract Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AB1 | Tortious Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AC1 | Real Property Action involving Commonwealth, Municipality, MBTA etc. | (A) |
| AD1 | Equity Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AE1 | Administrative Action involving Commonwealth, Municipality, MBTA,etc. | (A) |

### CN Contract/Business Cases

| | | |
|---|---|---|
| A01 | Services, Labor, and Materials | (F) |
| A02 | Goods Sold and Delivered | (F) |
| A03 | Commercial Paper | (F) |
| A04 | Employment Contract | (F) |
| A05 | Consumer Revolving Credit - M.R.C.P. 8.1 | (F) |
| A06 | Insurance Contract | (F) |
| A08 | Sale or Lease of Real Estate | (F) |
| A12 | Construction Dispute | (A) |
| A14 | Interpleader | (F) |
| BA1 | Governance, Conduct, Internal Affairs of Entities | (A) |
| BA3 | Liability of Shareholders, Directors, Officers, Partners, etc. | (A) |
| BB1 | Shareholder Derivative | (A) |
| BB2 | Securities Transactions | (A) |
| BC1 | Mergers, Consolidations, Sales of Assets, Issuance of Debt, Equity, etc. | (A) |
| BD1 | Intellectual Property | (A) |
| BD2 | Proprietary Information or Trade Secrets | (A) |
| BG1 | Financial Institutions/Funds | (A) |
| BH1 | Violation of Antitrust or Trade Regulation Laws | (A) |
| A99 | Other Contract/Business Action - Specify | (F) |

* See Superior Court Standing Order 1-88 for an explanation of the tracking deadlines for each track designation: F, A, and X. On this page, the track designation for each case type is noted in parentheses.

†* Choose this case type if ANY party is the Commonwealth, a municipality, the MBTA, or any other governmental entity UNLESS your case is a case type listed under Administrative Civil Actions (AA).

‡ Choose this case type if ANY party is an incarcerated party, UNLESS your case is a case type listed under Administrative Civil Actions (AA) or is a Prisoner Habeas Corpus case (E97).

### ER Equitable Remedies

| | | |
|---|---|---|
| D01 | Specific Performance of a Contract | (A) |
| D02 | Reach and Apply | (F) |
| D03 | Injunction | (F) |
| D04 | Reform/ Cancel Instrument | (F) |
| D05 | Equitable Replevin | (F) |
| D06 | Contribution or Indemnification | (F) |
| D07 | Imposition of a Trust | (A) |
| D08 | Minority Shareholder's Suit | (A) |
| D09 | Interference in Contractual Relationship | (F) |
| D10 | Accounting | (A) |
| D11 | Enforcement of Restrictive Covenant | (F) |
| D12 | Dissolution of a Partnership | (F) |
| D13 | Declaratory Judgment, G.L. c. 231A | (A) |
| D14 | Dissolution of a Corporation | (F) |
| D99 | Other Equity Action | (F) |

### PA Civil Actions Involving Incarcerated Party ‡

| | | |
|---|---|---|
| PA1 | Contract Action involving an Incarcerated Party | (A) |
| PB1 | Tortious Action involving an Incarcerated Party | (A) |
| PC1 | Real Property Action involving an Incarcerated Party | (F) |
| PD1 | Equity Action involving an Incarcerated Party | (F) |
| PE1 | Administrative Action involving an Incarcerated Party | (F) |

### TR Torts

| | | |
|---|---|---|
| B03 | Motor Vehicle Negligence - Personal Injury/Property Damage | (F) |
| B04 | Other Negligence - Personal Injury/Property Damage | (F) |
| B05 | Products Liability | (A) |
| B06 | Malpractice - Medical | (A) |
| B07 | Malpractice - Other | (A) |
| B08 | Wrongful Death - Non-medical | (A) |
| B15 | Defamation | (A) |
| B19 | Asbestos | (A) |
| B20 | Personal Injury - Slip & Fall | (F) |
| B21 | Environmental | (F) |
| B22 | Employment Discrimination | (F) |
| BE1 | Fraud, Business Torts, etc. | (A) |
| B99 | Other Tortious Action | (F) |

### RP Summary Process (Real Property)

| | | |
|---|---|---|
| S01 | Summary Process - Residential | (X) |
| S02 | Summary Process - Commercial/ Non-residential | (F) |

### RP Real Property

| | | |
|---|---|---|
| C01 | Land Taking | (F) |
| C02 | Zoning Appeal, G.L. c. 40A | (F) |
| C03 | Dispute Concerning Title | (F) |
| C04 | Foreclosure of a Mortgage | (X) |
| C05 | Condominium Lien & Charges | (X) |
| C99 | Other Real Property Action | (F) |

### MC Miscellaneous Civil Actions

| | | |
|---|---|---|
| E18 | Foreign Discovery Proceeding | (X) |
| E97 | Prisoner Habeas Corpus | (X) |
| E22 | Lottery Assignment, G.L. c. 10, § 28 | (X) |

### AB Abuse/Harassment Prevention

| | | |
|---|---|---|
| E15 | Abuse Prevention Petition, G.L. c. 209A | (X) |
| E21 | Protection from Harassment, G.L. c. 258E | (X) |

### AA Administrative Civil Actions

| | | |
|---|---|---|
| E02 | Appeal from Administrative Agency, G.L. c. 30A | (X) |
| E03 | Certiorari Action, G.L. c. 249, § 4 | (X) |
| E05 | Confirmation of Arbitration Awards | (X) |
| E06 | Mass Antitrust Act, G.L. c. 93, § 9 | (A) |
| E07 | Mass Antitrust Act, G.L. c. 93, § 8 | (X) |
| E08 | Appointment of a Receiver | (X) |
| E09 | Construction Surety Bond, G.L. c. 149, §§ 29, 29A | (A) |
| E10 | Summary Process Appeal | (X) |
| E11 | Worker's Compensation | (X) |
| E16 | Auto Surcharge Appeal | (X) |
| E17 | Civil Rights Act, G.L. c.12, § 11H | (A) |
| E24 | Appeal from District Court Commitment, G.L. c.123, § 9(b) | (X) |
| E94 | Forfeiture, G.L. c. 265, § 56 | (X) |
| E95 | Forfeiture, G.L. c. 94C, § 47 | (F) |
| E99 | Other Administrative Action | (X) |
| Z01 | Medical Malpractice - Tribunal only, G.L. c. 231, § 60B | (F) |
| Z02 | Appeal Bond Denial | (X) |

### SO Sex Offender Review

| | | |
|---|---|---|
| E12 | SDP Commitment, G.L. c. 123A, § 12 | (X) |
| E14 | SDP Petition, G.L. c. 123A, § 9(b) | (X) |

### RC Restricted Civil Actions

| | | |
|---|---|---|
| E19 | Sex Offender Registry, G.L. c. 6, § 178M | (X) |
| E27 | Minor Seeking Consent, G.L. c.112, § 12S | (X) |

## TRANSFER YOUR SELECTION TO THE FACE SHEET

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | __F__ | ☒ YES    ☐ NO |

## STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF —** On the face of the Civil Action Cover Sheet (or on attached additional sheets, if necessary), the plaintiff shall state the facts on which the plaintiff relies to determine money damages. A copy of the completed Civil Action Cover Sheet, including the statement concerning damages, shall be served with the complaint. **A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.**

**DUTY OF THE DEFENDANT —** If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with the defendant's answer a statement specifying the potential damages which may result if the plaintiff prevails.

## A CIVIL ACTION COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
## IF THIS COVER SHEET IS NOT FILLED OUT THOROUGHLY AND
## ACCURATELY, THE CASE MAY BE DISMISSED.



## Commonwealth of Massachusetts

MIDDLESEX,SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 2681CV01172

Harrison Copley MyeHL, PLAINTIFF(S),

v. Southern New Hampshire University
Loan Science, LLC
Loan Science Management,LLC DEFENDANT(S)



### SUMMONS

THIS SUMMONS IS DIRECTED TO Southern New Hampshire University (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Middlesex Superior Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

   a. Filing your **signed original** response with the Clerk's Office for Civil Business, Middlesex Superior Court, 370 Jackson Street, Lowell (address), by mail or in person, **AND**

   b. Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address: PO Box 6, Townsend, MA 01469 .

3. **What to include in your response.** An **"Answer"** is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

MAY 1 8 2026

CLERK

4.  **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5.  **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Heidi Brieger, Chief Justice on _____, 20___ .

Michael A. Sullivan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS



**Suffolk County Sheriff's Department** • 132 Portland Street, Boston, MA 02114 • (617) 704-6999

*Suffolk, ss.*

May 14, 2026

I hereby certify and return that on 5/13/2026 at 11:45 AM I served a true and attested copy of the Summons and Complaint in this action in the following manner: To wit, by delivering in hand to Victoria Gillis, , agent and person in charge at the time of service for *Southern New Hampshire University* at 17th Floor, Suite 1717 1 Ashburton Place Boston, MA 02105 . In this service hereof it was necessary and I actually used a motor vehicle 1 miles. Administrative Fee ($15.00) Attest/Copies ($5.00) Basic Service Fee (IH) ($30.00) Conveyance ($0.30) Postage and Handling ($1.00) Travel ($7.04) Deputy Expense ($5.00) Total: $63.34

Deputy Sheriff  Rowan Baptiste Jr.

_____
*Deputy Sheriff*

, 20___

COMMONWEALTH OF MASSACHUSETTS

LOWELL SUPERIOR COURT

**MIDDLESEX, ss.**                                          SUPERIOR COURT

CIVIL ACTION NO. 2681CV01172

_____

| | | |
|---|---|---|
| **HARRISON COPLEY MAYOTTE,** | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL COMPLAINT AND |
| | ) | DEMAND FOR JURY TRIAL |
| v. | ) | |
| | ) | **RECEIVED** |
| **SOUTHERN NEW HAMPSHIRE** | ) | 5/1/2026 |
| **UNIVERSITY,** | ) | |
| **LOAN SCIENCE, LLC, and** | ) | CLASS ACTION |
| **LOAN SCIENCE MANAGEMENT, LLC** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

_____

## INTRODUCTION

1.      This is a consumer-protection action about a promise and a betrayal. Southern New Hampshire University ("SNHU") - a university that spends hundreds of millions of dollars each year marketing itself as the accessible, student-friendly alternative to traditional higher education - wrote to a twenty-year-old former student on September 17, 2025 and made him a promise in plain English on official letterhead: _his account would not be placed with a collection agency before January 5, 2026_. Eight days later, SNHU's "pre-collection services partner" Loan Science, LLC ("Loan Science") wrote to the same student and identified itself as "a debt collector" attempting to "collect a debt that you owe Southern New Hampshire University." One of those two letters was true. Both cannot be. SNHU has attempted to explain how both can be true.

2.      The student - Plaintiff Harrison C. Mayotte - did exactly what SNHU told him to do. He paid the balance in full before SNHU's own January 5, 2026 deadline. The collection letter was unnecessary at its inception. The debt it purported to collect was paid within the window SNHU itself had set. The entire episode produced nothing of value for anyone.

3.      Plaintiff was not merely a paying student. He was an *actively performing* student at the moment SNHU referred his account to Loan Science for collection. On September 18, 2025 - the day after SNHU drafted its collection-posture letter and *before* Plaintiff received that letter by first-class mail - Plaintiff made a payment of $470.00 to his SNHU student account. That payment posted. The balance against which SNHU referred the account to Loan Science was the *post-payment* balance. SNHU referred to a debt collector an account that had, within the preceding seven days, received a voluntary ad hoc payment from a student who was continuing to perform in the ordinary course.

4.      The institutional record establishes the pattern. Between March 2024 and December 2025, Plaintiff made more than thirty payments to SNHU. SNHU accepted each payment. SNHU applied each payment to the balance. Between December 2024 and September 2025 - a nine-month window during which Plaintiff was not on any formal payment plan - SNHU accepted Plaintiff's voluntary ad hoc payments, without communication, without warning that his performance was unacceptable, and without suggestion that adverse action was contemplated. The September 17, 2025 letter was not a response to non-performance. Performance was ongoing. The letter was generated on an institutional cadence disconnected from Plaintiff's conduct.

5.      On December 25, 2025 - Christmas Day - Plaintiff made coordinated payments totaling $1,962.76, clearing the entire balance of his student account. He did so eleven days before SNHU's own January 5, 2026 deadline. Plaintiff performed. The institution was paid. This is the plaintiff whose account SNHU characterized to its own counsel as warranting referral to a debt collector.

6.      What makes this case exceptional is not the size of the underlying debt but the institutional machinery that produced the harm and the institutional indifference that compounded it. SNHU did not make a clerical error. SNHU operates a standardized pre-collection referral program in which template letters promising a grace period are mailed to students on one track, while collection referrals to Loan Science are processed on a parallel track with no mechanism to

ensure that the second track does not contradict the first, and no mechanism to check whether the student against whom referral is generated is currently performing on the account.

7.      On information and belief, Plaintiff is not the only student who received a promise of forbearance and a collection demand in the same week. He is simply the first to notice, to document, and to sue.

8.      Plaintiff disputed the debt in writing on October 4, 2025. Loan Science never responded. It never verified the debt. It held a disputed account open for more than six months in violation of the most basic obligation the Fair Debt Collection Practices Act imposes.

9.      SNHU responded through its Office of General Counsel & Compliance with a letter dated October 29, 2025 that will be Exhibit A at trial - a letter so helpful to Plaintiff's case that it might have been drafted by Plaintiff's own counsel, had he retained any. In it, SNHU's staff attorney (a) conceded that Loan Science is SNHU's agent whose disclosure conduct SNHU "required"; (b) argued that the September 25 collection letter was not really a collection letter, thereby providing the precise falsity Plaintiff needs to prove under the FDCPA; and (c) expressed regret while tendering nothing, preserving Plaintiff's entitlement to multiple damages under a line of Massachusetts cases that has been settled law for fifty years.

10.     Plaintiff served three pre-litigation notices - a demand letter on October 4, 2025, a supplemental notice on April 13, 2026, and a final supplemental notice on April 21, 2026 - each offering settlement at a fraction of the exposure documented herein. SNHU and Loan Science ignored all three. They had the opportunity to resolve this matter for less than the cost of drafting an answer. That opportunity has passed.

11.     This action seeks statutory damages under the FDCPA, actual damages, multiple damages under M.G.L. c. 93A, disgorgement of the payment procured by deception, compensatory damages for emotional injury, and the attorneys' fees and costs to which prevailing parties are entitled. Plaintiff brings this action individually and reserves the right to seek class certification on behalf of every student subjected to SNHU's contradictory collection workflow. The institutional scope of that workflow - including the number of affected students, the duration of the practice, and the measures SNHU took to conceal it - is a matter for discovery. Plaintiff intends to pursue it.

## PARTIES

12.     **Plaintiff Harrison C. Mayotte** is a natural person and resident of Townsend, Middlesex County, Massachusetts. At all relevant times, Plaintiff was a "consumer" as defined in 15 U.S.C. § 1692a(3) and a person entitled to the protections of M.G.L. c. 93A, § 9. Plaintiff is twenty-one years old. He is a graduate of SNHU with a B.S. in Business Administration.

13.     **Defendant Southern New Hampshire University** is a private nonprofit university with its principal place of business at 2500 North River Road, Manchester, New Hampshire 03106. SNHU is one of the largest universities in the United States by enrollment. It does substantial and continuous business in the Commonwealth of Massachusetts, including the recruitment, enrollment, billing, and collection of debts from Massachusetts residents, and engages in "trade or commerce" within the meaning of M.G.L. c. 93A, § 1. SNHU's annual marketing expenditure exceeds the GDP of some small nations. It has built a brand on the promise that it treats students differently than traditional universities do. This case is about how it treats them when they owe money.

14.     **Defendant Loan Science, LLC** ("Loan Science") is a Texas limited liability company registered to transact business in the Commonwealth of Massachusetts. Its registered agent in the Commonwealth is InCorp Services, Inc., 44 School Street, Suite 505, Boston, Massachusetts 02108. Loan Science has, in its most recent annual report filed with the Secretary of the Commonwealth on March 2, 2026, represented under the penalties of perjury that its business includes "first and third party collection services." Loan Science is, at all relevant times, a "debt collector" as defined in 15 U.S.C. § 1692a(6) - a characterization it applied to itself in its own September 25, 2025 letter, whether or not SNHU now wishes it hadn't.

15.     **Defendant Loan Science Management, LLC** ("Loan Science Management") is a Texas limited liability company likewise registered to transact business in the Commonwealth of Massachusetts, sharing the same registered agent (InCorp Services, Inc., 44 School Street, Suite 505, Boston) and the same principal office as Loan Science. In its 2026 annual report to the Secretary of the Commonwealth, Loan Science Management has sworn under the penalties of perjury that its business is "Manager of Loan Science, LLC." Loan Science Management exercises managerial direction and control over Loan Science's operations, including but not limited to the collection-management workflow under which Plaintiff's account was processed. On information

Date Filed 5/1/2026 4:17 PM
Superior Court - Middlesex
Docket Number

and belief, the standardized communications Loan Science sends to Massachusetts consumers - including the September 25, 2025 letter to Plaintiff - are designed, approved, supervised, or adopted by Loan Science Management in its capacity as manager.

16. **Loan Science and Loan Science Management as a Single Enterprise.** Loan Science and Loan Science Management share the same managers, the same registered agent, the same principal office, and the same sworn authorized signatory. On information and belief, they share offices, personnel, systems of record, financial accounts, and operational infrastructure. The distinction between the two entities is a formal matter of limited-liability structure; operationally, they function as a single enterprise, and each is the agent of the other in the conduct at issue. Every act of Loan Science pleaded herein is attributable to Loan Science Management, and vice versa, under ordinary principles of agency, single-enterprise doctrine, and the veil-piercing standards articulated in *My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614 (1968), and *Attorney General v. M.C.K., Inc.*, 432 Mass. 546 (2000).

# JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over the state-law claims pursuant to M.G.L. c. 212, § 4, and concurrent jurisdiction over the federal FDCPA claims pursuant to 15 U.S.C. § 1692k(d).

18. This Court has personal jurisdiction over all Defendants under M.G.L. c. 223A, § 3. Each Defendant has transacted business in the Commonwealth and caused tortious injury in the Commonwealth by acts or omissions directed at a Massachusetts resident. Loan Science and Loan Science Management - foreign limited liability companies from Texas - have duly registered as foreign corporations with the Secretary of the Commonwealth and maintain designated resident agents for service of process at 44 School Street, Suite 505, Boston, Massachusetts 02108, as foreign entities transacting business in Massachusetts are required to do. See M.G.L. c. 156D § 15.03. SNHU has not. Despite decades of substantial and continuous business in the Commonwealth - including the recruitment, enrollment, billing, and debt-collection activities directed at Plaintiff and thousands of other Massachusetts residents - SNHU has never delivered to the Secretary the certificate of authority required by M.G.L. c. 156D § 15.03, has never

appointed a resident agent, and has never paid the fees applicable to foreign corporations transacting business in the Commonwealth. The Texas debt collector, in other words, registered. The New Hampshire university did not. Personal jurisdiction over SNHU is nevertheless secure: an unregistered foreign corporation transacting business in the Commonwealth is not thereby excused from jurisdiction. See M.G.L. c. 156D § 15.02(b).

19.     Venue is proper in Middlesex County under M.G.L. c. 223, § 1, because Plaintiff resides in Middlesex County and the causes of action arose there.

## COMPLIANCE WITH M.G.L. c. 93A § 9(3)

20.     Plaintiff satisfied the written demand requirement of M.G.L. c. 93A § 9(3) as follows:

a.     On October 4, 2025, Plaintiff served Defendants SNHU and Loan Science by certified mail with return receipt requested with a written demand identifying the unfair and deceptive acts complained of, the injuries suffered, and a demand for reasonable relief.

b.     On April 13, 2026, Plaintiff served both Defendants by certified mail with return receipt requested a supplemental pre-litigation notice, expressly characterized as a supplement to and incorporated into the October 4, 2025 demand, identifying additional unfair and deceptive acts, additional evidentiary materials, and an updated demand for reasonable relief.

c.     On April 21, 2026, Plaintiff served both Defendants a second supplemental notice withdrawing the prior settlement figure, identifying additional material developments (including defendants' respective failures to satisfy Massachusetts regulatory filing obligations), and preserving the demand window.

21.     The thirty-day response window under § 9(3) as to the October 4, 2025 demand expired on or about November 3, 2025. Loan Science did not respond at all. SNHU responded, through counsel, by letter dated October 29, 2025, which declined to tender and instead advanced the "pre-collection services" characterization described herein. Neither defendant responded to the April 13, 2026, supplement or the April 21, 2026, supplement. The § 9(3) demand requirement is satisfied as to both Defendants and as to all 93A claims pleaded herein, and the statutory entitlement to multiple damages under § 9(3) is preserved.

22.     To the extent any defendant contends that any particular unfair or deceptive act pleaded herein was not specifically identified in the October 4, 2025 demand, Plaintiff further pleads that (a) the April 13, 2026 and April 21, 2026 supplements collectively identified each such act with particularity, supplementing rather than supplanting the October 4, 2025 demand; (b) each supplement was served in writing by certified mail on each defendant; (c) each supplement provided each defendant a renewed opportunity to tender reasonable relief; and (d) the supplements therefore satisfy the functional purpose of § 9(3) as to each act pleaded, whether or not the individual act was articulated in identical terms in the October 4 demand.

23.     As to Defendant Loan Science specifically, Plaintiff further pleads that Loan Science's total failure to respond to the October 4, 2025 demand, to the April 13, 2026 supplement, and to the April 21, 2026 further notice - a period of non-response exceeding six months - constitutes a waiver of any objection to the scope or sufficiency of the § 9 demand. A defendant that receives a statutory demand and simply does not answer cannot later be heard to complain that the demand was insufficiently detailed. See generally *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688 (1975) (purpose of § 9 demand is to give defendant notice and opportunity to settle; defendant that ignores demand may not complain of its form).

24.     As to Defendant Loan Science Management, Plaintiff pleads that (a) the § 9 demand served on Loan Science constructively reached Loan Science Management, because the two entities share the same registered agent, the same principal office, the same managers, and the same authorized signatory; and (b) Plaintiff's 93A claims against Loan Science Management are therefore properly before this Court notwithstanding the absence of a separately addressed § 9 demand. In the alternative, Plaintiff pleads that 93A § 9 compliance is not required for the non-93A claims asserted against Loan Science Management, which proceed on independent common-law and statutory bases.

25.     To the extent any court should determine that § 9(3) compliance is nonetheless deficient as to any specific 93A claim against any defendant, Plaintiff seeks leave to dismiss that specific claim without prejudice and refile upon service of a supplemental demand, with the statute of limitations equitably tolled as of the filing of this Complaint. All other claims against all defendants, including the non-93A claims, proceed without regard to § 9(3).

## FACTUAL ALLEGATIONS

### A. The Course of Performance: Nineteen Months of Accepted Payments

26.     Plaintiff enrolled at SNHU in or about May 2023 as a transfer student. He completed his remaining coursework on an accelerated schedule and graduated in 2024 with a B.S. in Business Administration.

27.     Between March 26, 2024, and December 25, 2025, Plaintiff made more than thirty separate payments to his SNHU student account. The payments were made on multiple card accounts in varying amounts ranging from $20.63 to $1,333.28. The aggregate payments cleared both the pre-C-3 carry-forward balance and the full C-3 term tuition of $2,970.00. The account balance reached $0.00 on December 25, 2025.

28.     SNHU accepted each payment. SNHU applied each payment to the balance. SNHU never rejected any payment as insufficient. SNHU never communicated to Plaintiff that any amount, cadence, or card was unacceptable. SNHU's ledger documents the course of performance in full.

29.     In or about December 2024, SNHU administratively removed Plaintiff from a formal payment plan that had been in place with respect to the carry-forward balance. SNHU did not notify Plaintiff by telephone. SNHU did not notify Plaintiff by personalized email. SNHU sent automated system-generated notifications. Plaintiff responded to the removal by making a partial payment of $76.00 on December 12, 2024, and a further payment of $118.76 on December 31, 2024, which together zeroed the carry-forward balance.

30.     Between January 1, 2025 and September 17, 2025 - a period of approximately eight and one-half months - Plaintiff was not on any formal payment plan. During that period, Plaintiff made voluntary ad hoc payments across five transactions. SNHU accepted each payment, applied each payment, and communicated nothing to Plaintiff during the entire period suggesting that his ad hoc performance was unsatisfactory or that any adverse institutional action was contemplated.

31.     The reasonable understanding of a consumer in Plaintiff's position, and Plaintiff's actual understanding, was that SNHU was content to accept voluntary ad hoc payments, that no adverse action was in prospect, and that the balance was progressing toward resolution on a

timetable acceptable to both parties. That understanding was correct for eight and one-half months. It became false, without warning, on September 17, 2025.

### B. SNHU's September 17, 2025 Promise

32.     On September 17, 2025, SNHU sent Plaintiff a letter on SNHU letterhead titled "URGENT STATUS UPDATE" by first-class mail only. The letter made a promise that any reader of ordinary intelligence would understand, and that any student receiving it would rely upon: "Payment in full or a satisfactory payment plan must be arranged prior to 1/5/2026 to avoid placement with a collection agency, which may adversely affect your credit."

33.     The same letter described Loan Science's role in terms calculated to reassure: "SNHU has partnered with a third-party agency, Loan Science, to assist you with setting up a payment plan or paying your balance in full. Loan Science will be contacting you within the next few days via mail and telephone and can assist with any questions regarding your balance due."

34.     The word "assist" appears twice in the letter. The word "collect" appears nowhere. A consumer reading this letter would understand - and Plaintiff did understand - that Loan Science was coming to help, not to collect; that the student had until January 5, 2026, to make arrangements; and that collection activity, with its attendant credit consequences, would not begin before that date.

### C. The September 18, 2025 Payment: Plaintiff's Ordinary-Course Performance

35.     On September 18, 2025 - the day after SNHU drafted the "URGENT STATUS UPDATE" letter, and *before Plaintiff had received the letter*, which was transmitted by first-class mail - Plaintiff made a payment of $470.00 to his SNHU student account. The payment posted. The payment was made in the ordinary course of Plaintiff's continued ad hoc performance on the account. The payment was not prompted by the September 17 letter, because Plaintiff had not yet received the September 17 letter at the time the payment was made.

36.     The institutional significance of the September 18, 2025, payment is that it disproves, on the institution's own records, any inference that Plaintiff required collection pressure to motivate payment. Plaintiff was already paying, of his own initiative, without prompting, on a cadence consistent with his nineteen-month performance history. SNHU's premise - implicit in

the September 17 letter - that the consumer required a collection-posture communication to prompt payment is disconfirmed by the payment that arrived before the communication did.

37. Following the September 18, 2025, payment, Plaintiff's asserted account balance was reduced to approximately $1,263.58. That pre-payment balance of $1,733.58 is the balance SNHU referred to Loan Science on or about September 19-22, 2025 for collection action, and, according to Loan Science's letter, Loan Science received notice from SNHU of the $470 payment.

38. SNHU thereby referred to a debt collector the account of a student who had, within the preceding seven days, made a voluntary ad hoc payment to the institution. The referral was generated without any individualized review of the account. Had any such review occurred, it would have disclosed the September 18 payment, the nineteen-month performance history, and the absence of any triggering non-performance event. The referral was a systems-driven operational event disconnected from any reasonable assessment of whether collection action against the specific consumer was warranted.

### D. Loan Science's September 25, 2025 Collection Demand

39. Eight days after the September 17 letter - and seven days after the September 18 payment - Loan Science mailed Plaintiff a letter that opened: "Loan Science, LLC is a debt collector. We are trying to collect a debt that you owe Southern New Hampshire University. We will use any information you give us to help collect the debt."

40. The letter was a standardized FDCPA validation notice under 15 U.S.C. § 1692g(a). It demanded that Plaintiff respond by October 25, 2025 or Loan Science would "assume that our information is correct." It contained a balance statement, a thirty-day dispute window, and a deemed-accuracy warning. It was, by every objective measure - format, content, regulatory structure, and Loan Science's own self-identification - a debt-collection communication. It was sent one hundred and two days before SNHU had promised, in writing, that any such communication would occur.

41. The September 17 letter said "assist." The September 25 letter said "collect." The September 17 letter said January 5. The September 25 letter arrived September 25. There is no reading of these two documents, by any consumer of any sophistication, that reconciles them. They are contradictory on their face, and the contradiction is the injury.

42.     On March 2, 2026, Loan Science filed its 2026 annual report with the Secretary of the Commonwealth of Massachusetts, signed under the penalties of perjury by its manager Curtis Wright. In that filing, Loan Science represented that "Loan Science provides portfolio analysis, data analytics, first and third party collection services, and other specialty services for the consumer lending marketplace." Loan Science's sworn representation that it engages in "first and third party collection services" is incompatible with SNHU's October 29, 2025 representation, through counsel, that Loan Science's activities with respect to Plaintiff constituted only "pre-collection services." One of the two sworn or written institutional representations is false. Plaintiff need not elect between them.

43.     Loan Science Management, as the sworn "Manager of Loan Science, LLC," shares Loan Science's representation to the Commonwealth and is bound by it to the same extent.

### E. Plaintiff's October 4, 2025 Dispute and Demand

44.     On October 4, 2025, Plaintiff sent both Defendants, by certified mail with return receipt requested, a letter that disputed the alleged debt under 15 U.S.C. § 1692g(b), demanded validation, demanded cessation of collection activity, asserted claims under the FDCPA and M.G.L. c. 93A, and made a written demand for settlement at $3,000 under M.G.L. c. 93A, § 9.

45.     Both Defendants received the letter. Neither accepted the $3,000 offer. Neither will see that number again.

### F. Loan Science's Six-Month Silence

46.     Loan Science did not respond to Plaintiff's October 4, 2025 dispute letter. It did not respond the following week. It did not respond the following month. It has not responded to this day. It never mailed verification of the debt. It never acknowledged the dispute. For more than six months - from October 2025 through the date of this Complaint - Loan Science held a disputed account in an active posture without providing the verification that 15 U.S.C. § 1692g(b) requires before any further collection activity may lawfully occur.

47.     Loan Science is a professional debt-collection company. It is licensed in multiple states. It employs compliance personnel. It knows what a written dispute is. It knows what § 1692g(b) requires. It chose to do nothing. For six months.

48.     On information and belief, Plaintiff's account remained in Loan Science's system in an active or open status throughout this period, without notation of the dispute, without suspension of collection activity, and without any communication to SNHU that the account was disputed and that collection authority had been suspended by operation of federal law. Loan Science Management, in its capacity as manager of Loan Science, either directed, approved, or failed to supervise this continuing violation, and is liable therefor.

### G. SNHU's October 29, 2025 Response

49.     SNHU responded to Plaintiff's demand through Joseph L. Rivera, Esq., Staff Attorney, Office of General Counsel & Compliance, by letter dated October 29, 2025 (the "October 29 Letter"). The October 29 Letter is a document that this Complaint will have frequent occasion to discuss, because it is the most useful document in the case - useful, that is, to Plaintiff.

50.     **Admission One: Agency.** The October 29 Letter characterizes Loan Science as SNHU's "pre-collection services partner"; represents that SNHU "strives to ensure that its partners engaging in both pre-collection and collection activities remain fully compliant" with applicable law; and states that "Loan Science was required to identify itself as a debt collector … even as it was engaging in only pre-collection activities." SNHU has thereby admitted that it directs Loan Science's conduct, maintains compliance oversight, and "required" the specific content of Loan Science's September 25 letter. Having so conceded, SNHU cannot disclaim agency liability.

51.     **Admission Two: The "pre-collection" defense is the plaintiff's case.** Attorney Rivera's central argument - that Loan Science's referral "does not constitute placement with a collection agency" - is offered as a defense. It is not one. It is, if credited, a concession that Loan Science's self-identification as "a debt collector" was false. SNHU's own lawyer, writing on SNHU letterhead, has provided the falsity that Plaintiff needs to prove under 15 U.S.C. § 1692e. The dilemma is inescapable:

> a.     *If Loan Science was engaged in collection activity on September 25, 2025, then SNHU's September 17, 2025 representation that no collection placement would occur before January 5, 2026 was false and deceptive under 93A § 2 and 940 C.M.R. 3.05 and 3.16; or*

b.      *If Loan Science was engaged only in "pre-collection services," then Loan Science's self-identification as "a debt collector" attempting to "collect a debt" was false under 15 U.S.C. § 1692e, and is a per se violation of 93A under 940 C.M.R. 3.16(4), imputed to SNHU as the principal that "required" the representation.*

52.      Either characterization is sufficient. Both are pleaded in the alternative pursuant to Mass. R. Civ. P. 8(e)(2). SNHU may elect its position at summary judgment or at trial. Plaintiff is indifferent to the choice.

53.      **Admission Three: Regret without remedy.** The October 29 Letter concludes that "there may have been some confusion, and we regret any misunderstanding this may have caused." The letter tenders nothing. Under *Kohl v. Silver Lake Motors, Inc.*, 369 Mass. 795 (1976); *Clegg v. Butler*, 424 Mass. 413 (1997); and *Brandt v. Olympic Constr., Inc.*, 16 Mass. App. Ct. 913 (1983), a response that expresses regret without tendering a reasonable offer of settlement preserves the claimant's entitlement to multiple damages in full. This is not a close question. It has been settled law in this Commonwealth for half a century.

### H. Plaintiff's Payment in Full on Christmas Day, Within SNHU's Own Deadline

54.      Following the Loan Science letter and the October 29 response, Plaintiff continued to make payments to SNHU. On November 29, 2025, Plaintiff made coordinated payments of $634.10 across two card accounts. On December 25, 2025 - Christmas Day - Plaintiff made coordinated payments that cleared the entire balance of Plaintiff's student account.

55.      Plaintiff paid SNHU in full on Christmas Day 2025, eleven days before SNHU's own January 5, 2026 deadline. He did precisely what SNHU's September 17, 2025 letter told him to do, on time, in accordance with SNHU's own instructions, faster than the institution's own stated window required.

56.      The acceleration and magnitude of the December 2025 payments, and the coordinated use of multiple card accounts to effect them, reflect practical compulsion arising from the collection pressure Defendants had generated. The payments were not voluntary in any meaningful sense. They were made under duress caused by the institutional machinery Defendants had put in motion and refused to stop.

57. The payment was made under protest. Plaintiff's October 4, 2025 written dispute - acknowledged in SNHU's own October 29 response - negated any inference of accord, satisfaction, or waiver. Plaintiff's payment discharged the underlying asserted balance; it did not release his claims.

58. The premature collection placement served no legitimate purpose. It did not accelerate payment - Plaintiff was always going to pay within the window SNHU had set, and was in fact paying without prompting. It did not protect SNHU's financial interest - the balance was paid in full. What it produced was not revenue. What it produced was injury.

### J. The Institutional Scope: A Standardized Deception Applied to a Class of Students

59. SNHU did not draft the September 17, 2025 letter by hand for Harrison Mayotte. It is a template. On information and belief, SNHU's pre-collection referral workflow operates as follows: (a) a student's account reaches a certain age or balance threshold; (b) SNHU's systems automatically generate and mail a template letter - substantially identical to the September 17 letter - promising the student a grace period before collection placement; (c) simultaneously or within days, SNHU's systems refer the account to Loan Science for contact, without individualized review of whether the student is currently performing on the account; (d) Loan Science, acting under the management and direction of Loan Science Management, mails a standardized FDCPA-compliant collection notice - identifying itself as a debt collector, demanding response within thirty days - before the grace period stated in the SNHU letter has elapsed. This is not a one-off error. It is the system.

60. On information and belief, the workflow generates referrals against post-payment account balances without checking whether the student has recently made a payment, without checking whether the student is performing on an ad hoc basis, and without any human review of the individual account. Every Massachusetts student whose account has been referred to Loan Science under this workflow is a potential class member whose individual circumstances - including whether they, like Plaintiff, were actively paying at the moment of referral - have never been considered by SNHU.

61. On information and belief, hundreds or thousands of SNHU students have received this same contradictory pair of letters. Over the duration of the SNHU-Loan Science partnership,

the total number of affected Massachusetts consumers, and the number of consumers whose referrals occurred under circumstances materially identical to Plaintiff's - including referrals made while the student was actively performing - are matters within Defendants' exclusive knowledge and control.

**62.**    Virtually none of those students knew they had a legal claim. That is not an accident. It is the design.

### K. Fraudulent Concealment: The Architecture of Ignorance

**63.**    SNHU's pre-collection program is structured, whether by intention or by institutional negligence so complete as to be functionally indistinguishable from intention, to prevent affected students from recognizing that they have been subjected to unlawful conduct. The concealment operates through multiple reinforcing mechanisms:

a.    **Linguistic camouflage.** SNHU characterizes Loan Science as a "partner" that will "assist" students. The September 17 template letter does not use the word "collection" to describe what Loan Science will do. A student who receives a collection demand from Loan Science and feels uneasy about it will, if the student calls SNHU, be told - as Plaintiff was told through Attorney Rivera's October 29 letter - that this is "pre-collection services," not actual collection. The very characterization that SNHU deployed as a legal defense is the mechanism of concealment.

b.    **Institutional authority.** SNHU is a university. Students trust universities. When a university says "this is not collection, this is assistance," students believe it. They do not retain lawyers. They do not file 93A demands. They do not read the FDCPA. They pay the balance or ignore it, and in either case they do not discover that the contradictory letter sequence was unlawful, because the institution that caused the harm is the same institution that defines the harm away.

c.    **Normalization.** Students who owe money expect to receive letters about it. The arrival of a letter from Loan Science, even if its tone is harsher than expected, does not register as a legal violation to most consumers. It registers as unpleasantness. Students who feel that something is wrong lack the legal vocabulary to articulate what

is wrong, and lack the resources to investigate. The violation hides in plain sight, disguised as routine collection activity.

d.   **Isolation.** Each student receives the letters individually. Students do not compare notes. There is no mechanism - and no reason for a student to suspect one is needed - to discover that the contradiction between the September 17 letter and the September 25 letter is not an individual error but a systemic practice affecting a class.

e.   **Invisibility of the performance record.** A student who is making payments, as Plaintiff was, has no reason to suspect that the institution is simultaneously referring the account to a debt collector. The performance record is visible to the institution but not to the student's understanding of institutional intent. The consumer reasonably assumes that making payments prevents collection; the institutional practice is that the workflow is indifferent to whether payments are being made.

64.   Under Massachusetts law, where the wrongdoing is of a type that a reasonable person would not discover through ordinary diligence, the statute of limitations is tolled until discovery or until the plaintiff should have discovered the claim. *Puritan Medical Center, Inc. v. Cashman*, 413 Mass. 167 (1992); *Koe v. Mercer*, 450 Mass. 97 (2007). The concealment here is not the concealment of a single document or a single transaction. It is the concealment of a pattern - a standardized workflow that, by its nature and by SNHU's affirmative characterization of it as something other than what it is, prevents the affected class from discovering the violation.

65.   The tolling implications are significant. If SNHU has operated this workflow for three years, or five years, or longer, then the class of affected students is not limited to those whose claims fall within the four-year 93A limitations period measured backward from the filing date. It extends to every student subjected to the contradictory letter sequence for the entire duration of the practice, because the practice was inherently self-concealing and the concealment was perpetuated by SNHU's own framing of Loan Science's role. The duration of the workflow, the template library, the referral logs, and the consumer-complaint records are all matters within Defendants' exclusive possession and are proper subjects of early discovery.

66.   Plaintiff alleges, on information and belief, that SNHU was aware or should have been aware that its pre-collection referral workflow produced contradictory communications to

students, and that the workflow was generating referrals of accounts held by students who were actively performing.

**67.** Plaintiff further alleges that SNHU took no steps to audit the workflow, to reconcile the timing of template letters with Loan Science referrals, to check whether students against whom referrals were generated had recently made payments, or to ensure that students received consistent information.

**68.** SNHU's failure to self-correct - even after receiving Plaintiff's October 4, 2025 demand and April 13, 2026 and April 21, 2026 supplemental notices, each of which identified the contradiction and the performance issue in detail - is evidence that the concealment was willful, or, at minimum, that SNHU's institutional indifference to the harm was so complete as to constitute the functional equivalent of willfulness.

### *L. Defendants' Three Opportunities to Resolve*

**69.** Plaintiff served an initial demand at $3,000 on October 4, 2025; a supplemental notice at $12,750 on April 13, 2026; and a further supplement on April 21, 2026; Defendants responded to one of these three demands - the October 29 Letter - in a manner that has been extensively characterized above. They responded to neither of the subsequent.

**70.** Three opportunities to resolve this matter. Three institutional decisions to bet that a twenty-one-year-old without a lawyer would go away. The first offer was $3,000 - less than the cost of a single deposition. The last offer was $12,750 - less than the cost of a motion for summary judgment. He did not go away. He is here.

# CAUSES OF ACTION

## COUNT I

### Violation of 15 U.S.C. § 1692g(b) - Failure to Cease Collection After Written Dispute

*(Against Loan Science and Loan Science Management)*

**71.** Plaintiff realleges and incorporates by reference all preceding paragraphs.

**72.** Plaintiff's October 4, 2025 letter was a timely written dispute under 15 U.S.C. § 1692g(a) and (b). Upon receipt, Loan Science was required to cease collection of the disputed debt until it obtained verification and mailed a copy to Plaintiff.

**73.** Loan Science never mailed verification. It retained the account in an active posture for more than six months. Each day or discrete collection-management act during which Loan Science retained the account without mailing verification constitutes a separate violation of 15 U.S.C. § 1692g(b).

**74.** Loan Science Management, as the manager directing, approving, or supervising Loan Science's collection-management operations, is liable to the same extent as a debt collector under 15 U.S.C. § 1692a(6) to the extent it engaged in the regular collection of debts owed or asserted to be owed to another. In the alternative, Loan Science Management is liable as a common-law principal, joint venturer, or aider and abettor of Loan Science's violations.

**75.** Plaintiff is entitled to statutory damages of up to $1,000 under 15 U.S.C. § 1692k(a)(2)(A), actual damages under § 1692k(a)(1), and reasonable attorneys' fees and costs under § 1692k(a)(3), against Loan Science and Loan Science Management.

## COUNT II

### Violation of 15 U.S.C. § 1692e(2)(A) - False Representation of Character or Legal Status

*(Against Loan Science and Loan Science Management)*

**76.** Plaintiff realleges and incorporates by reference all preceding paragraphs.

**77.** Loan Science's September 25, 2025 letter identified Loan Science as "a debt collector" attempting to "collect a debt." If, as SNHU insists, Loan Science was engaged only in "pre-collection services," then that self-identification was a false representation of the character or legal status of the debt in violation of 15 U.S.C. § 1692e(2)(A). SNHU's own lawyer supplied the falsity.

**78.** Loan Science Management directed, approved, or supervised the issuance of the September 25, 2025 letter in its capacity as manager of Loan Science and is liable therefor.

**79.** Plaintiff is entitled to statutory damages of up to $1,000 under 15 U.S.C. § 1692k(a)(2)(A), actual damages under § 1692k(a)(1), and reasonable attorneys' fees and costs under § 1692k(a)(3), against Loan Science and Loan Science Management.

## COUNT III

### Violation of 15 U.S.C. § 1692e(10) - False or Deceptive Means to Collect

*(Against Loan Science and Loan Science Management)*

**80.** Plaintiff realleges and incorporates by reference all preceding paragraphs.

**81.** The overall structure of the September 25 letter - debt-collector identification, balance statement, thirty-day deadline, deemed-accuracy warning - was a false or deceptive means to collect or attempt to collect a debt, in violation of 15 U.S.C. § 1692e(10).

**82.** Loan Science Management is liable as set forth in Count II.

**83.** Plaintiff is entitled to statutory damages of up to $1,000 under 15 U.S.C. § 1692k(a)(2)(A), actual damages under § 1692k(a)(1), and reasonable attorneys' fees and costs under § 1692k(a)(3), against Loan Science and Loan Science Management.

## COUNT IV

### Violation of 15 U.S.C. § 1692e - Misleading Implication of Active Collection Status

*(Against Loan Science and Loan Science Management)*

**84.** Plaintiff realleges and incorporates by reference all preceding paragraphs.

**85.** The September 25, 2025 letter's format, tone, thirty-day response demand, and deemed-accuracy warning conveyed to the least sophisticated consumer that the account was in active collection. This was materially misleading given SNHU's eight-day-old written representation to the contrary, and given that Plaintiff's September 18, 2025 payment had reduced the balance in the ordinary course.

**86.** Loan Science Management is liable as set forth in Count II.

87.    Plaintiff is entitled to statutory damages of up to $1,000 under 15 U.S.C. § 1692k(a)(2)(A), actual damages under § 1692k(a)(1), and reasonable attorneys' fees and costs under § 1692k(a)(3), against Loan Science and Loan Science Management.

## COUNT V

### Violation of 15 U.S.C. § 1692e - False Representation by Omission

*(Against Loan Science and Loan Science Management)*

88.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

89.    The September 25 letter failed to disclose that the creditor had, eight days earlier, represented to the consumer in writing that collection placement would not occur for another 102 days, and failed to disclose that the consumer had made a payment of $470.00 to the creditor within the preceding seven days. The omissions rendered the letter misleading to the least sophisticated consumer, in violation of 15 U.S.C. § 1692e.

90.    Loan Science Management is liable as set forth in Count II.

91.    Plaintiff is entitled to statutory damages of up to $1,000 under 15 U.S.C. § 1692k(a)(2)(A), actual damages under § 1692k(a)(1), and reasonable attorneys' fees and costs under § 1692k(a)(3), against Loan Science and Loan Science Management.

## COUNT VI

### Compelled False Mini-Miranda Disclosure - M.G.L. c. 93A § 2 and 940 C.M.R. 3.16(4)

*(Against All Defendants)*

92.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

93.    SNHU "required" Loan Science to identify itself as a debt collector. If the communication was not a debt-collection communication - as SNHU now insists - then the mini-Miranda disclosure SNHU compelled was a false statement directed by SNHU, through Loan Science as the instrumentality, to a Massachusetts consumer. That compelled false statement is itself an unfair or deceptive act under M.G.L. c. 93A § 2 and 940 C.M.R. 3.16(4), committed directly by SNHU, and does not depend upon the imputation of Loan Science's conduct to SNHU.

The FDCPA original-creditor exemption has no application to this claim, which is a direct 93A claim arising from SNHU's own directive speech.

94.    Loan Science and Loan Science Management are jointly liable as the speakers of the compelled false statement and as the instrumentalities through which SNHU directed the communication.

95.    Plaintiff is entitled to statutory damages of up to $1,000 under 15 U.S.C. § 1692k(a)(2)(A), actual damages under § 1692k(a)(1), and reasonable attorneys' fees and costs under § 1692k(a)(3), against All Defendants.

## COUNT VII

### Violation of 15 U.S.C. § 1692f - Unfair Collection During Grace Period and Against Performing Account

*(Against Loan Science and Loan Science Management)*

96.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

97.    The initiation of collection activity during a period the creditor had expressly represented as collection-free, and against a consumer who had made a voluntary ad hoc payment to the creditor within the preceding seven days, was unfair and unconscionable within the meaning of 15 U.S.C. § 1692f.

98.    Loan Science Management is liable as set forth in Count II.

99.    Plaintiff is entitled to statutory damages of up to $1,000 under 15 U.S.C. § 1692k(a)(2)(A), actual damages under § 1692k(a)(1), and reasonable attorneys' fees and costs under § 1692k(a)(3), against Loan Science and Loan Science Management.

## COUNT VIII

### Violation of 15 U.S.C. § 1692f - Unfair Timing of Initial Communication

*(Against Loan Science and Loan Science Management)*

100.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

101.    Sending a formal debt-collection demand eight days after the creditor's assurance of a 111-day grace period, and seven days after the consumer's ordinary-course payment, was an independently unfair practice within the meaning of 15 U.S.C. § 1692f.

102.    Loan Science Management is liable as set forth in Count II.

103.    Plaintiff is entitled to statutory damages of up to $1,000 under 15 U.S.C. § 1692k(a)(2)(A), actual damages under § 1692k(a)(1), and reasonable attorneys' fees and costs under § 1692k(a)(3), against Loan Science and Loan Science Management.

## COUNT IX

### Violations of 940 C.M.R. 7.00 et seq.

*(Against Loan Science and Loan Science Management)*

104.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

105.    Loan Science's conduct violated 940 C.M.R. 7.04(1)(f), 7.07(1), 7.07(2), 7.07(5), 7.07(13), 7.07(17), and 7.07(22), each constituting a separate per se violation of M.G.L. c. 93A, § 2.

106.    Loan Science Management directed, approved, or supervised the conduct giving rise to each violation and is liable therefor.

107.    Plaintiff is entitled to actual damages, multiple damages, attorneys' fees, and costs.

## COUNT X

### Violation of M.G.L. c. 93A, §§ 2 and 9 (All FDCPA and 940 C.M.R. Violations as Per Se 93A Violations)

*(Against Loan Science and Loan Science Management)*

108.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

109.    Each of the FDCPA violations in Counts I through V, VII, and VIII, and each of the 940 C.M.R. violations in Count IX, constitutes a separate per se unfair or deceptive act under M.G.L. c. 93A, § 2. Loan Science's and Loan Science Management's violations were willful and knowing. Double or treble damages are warranted.

110.    Plaintiff is entitled to actual damages, multiple damages, attorneys' fees, and costs.

## COUNT XI

### Violation of M.G.L. c. 93A, §§ 2 and 9 (Direct and Vicarious Liability)

*(Against SNHU)*

111.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

112.    SNHU engaged in unfair or deceptive acts by: representing that no collection placement would occur before January 5, 2026 while placing the account within eight days; characterizing Loan Science as "assistance" while deploying it as a collector; directing a false mini-Miranda disclosure; referring a performing account to a debt collector without individualized review; operating a workflow that generates referrals without regard to the consumer's current performance; failing to tender in response to four pre-litigation demands; and maintaining institutional silence in the face of documented harm. SNHU is further vicariously liable for all acts of its admitted agent Loan Science and of Loan Science Management as the managing principal of Loan Science.

113.    SNHU's violations were willful and knowing. This is not a close question. SNHU drafted the September 17 letter. SNHU controlled the timing of the Loan Science referral. SNHU referred an account against which the consumer had made a payment within the preceding seven days. SNHU responded to a statutory demand with a letter that conceded agency, advanced a self-defeating defense, and tendered nothing. SNHU then ignored three further demands. That is not negligence. It is policy.

114.    Plaintiff is entitled to actual damages, multiple damages, attorneys' fees, and costs.

## COUNT XII

### Violation of M.G.L. c. 93A via 940 C.M.R. 3.05 and 3.16

*(Against SNHU)*

115.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

116.    SNHU's conduct violated 940 C.M.R. 3.05(1), 3.16(1), 3.16(3), and 3.16(4), each constituting a separate per se violation of M.G.L. c. 93A, § 2.

117.    Plaintiff is entitled to actual damages, multiple damages, attorneys' fees, and costs.

## COUNT XIII

### Breach of Contract and/or Promissory Estoppel

*(Against SNHU)*

118.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

119.    SNHU's course of dealing with Plaintiff between March 2024 and September 2025 - accepting ad hoc voluntary payments without communication, warning, or indication that the payment pattern was unacceptable - constituted, at minimum, an implied contract under which Plaintiff's ongoing voluntary performance was accepted as satisfactory. SNHU's September 17, 2025 letter constituted an additional express offer, or in the alternative a promissory representation, that Plaintiff's account would not be placed with a collection agency before January 5, 2026 if payment in full or a payment plan was arranged within that window. Plaintiff accepted by forbearing from immediate action, continuing to perform, and planning his response within the timeline SNHU established. SNHU breached by placing the account with Loan Science within eight days.

120.    In the alternative, under promissory estoppel, SNHU made a promise it should have expected would induce reliance; Plaintiff relied to his detriment; and injustice can be avoided only by enforcement. See *Rhode Island Hosp. Trust Nat'l Bank v. Varadian*, 419 Mass. 841, 850 (1995).

## COUNT XIV

### Invasion of Privacy - M.G.L. c. 214, § 1B

*(Against All Defendants)*

121.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

122.    SNHU's September 17 letter created a reasonable expectation that Plaintiff would be free from collection contact until January 5, 2026. Plaintiff's ongoing ad hoc performance reinforced that expectation. The September 25 Loan Science letter, arriving eight days later and seven days after Plaintiff's $470 payment, intruded upon that expectation in a manner that was unreasonable, substantial, and serious.

## COUNT XV

## Money Had and Received

*(Against SNHU)*

**123.**   Plaintiff realleges and incorporates by reference all preceding paragraphs.

**124.**   SNHU procured Plaintiff's accelerated payments - including the $634.10 paid on November 29, 2025 and the $1,962.76 paid on Christmas Day, December 25, 2025 - by means of the deceptive conduct pleaded herein. The payments were not voluntary in any meaningful sense and were made under protest. In equity and good conscience, the sums attributable to the deception belong to Plaintiff. See *Moses v. Macferlan*, 2 Burr. 1005, 1012 (K.B. 1760) (Mansfield, L.J.); *Metropolitan Life Ins. Co. v. Cotter*, 464 Mass. 623, 644 (2013).

## COUNT XVI

## Declaratory Judgment - M.G.L. c. 231A

*(Against All Defendants)*

**125.**   Plaintiff realleges and incorporates by reference all preceding paragraphs.

**126.**   Pursuant to M.G.L. c. 231A, Plaintiff seeks a declaration that: (a) SNHU's September 17, 2025 representation was false and deceptive; (b) the premature placement contradicted SNHU's written representation; (c) the referral was made without regard to Plaintiff's active performance on the account; (d) Plaintiff's December 2025 payments were made under compulsion and under protest; (e) SNHU is obligated to return to Plaintiff the amounts paid under compulsion with pre-judgment interest; and (f) Defendants' pre-collection referral workflow, as operated during the class period, violates M.G.L. c. 93A as to every Massachusetts consumer subjected to it.

## CLASS ALLEGATIONS AND FRAUDULENT CONCEALMENT TOLLING

127.    Plaintiff brings Counts X, XI, XII, and XVI on behalf of himself and all others similarly situated, and reserves the right to seek class certification pursuant to Mass. R. Civ. P. 23 upon completion of initial discovery. Plaintiff defines the putative class as: All natural persons residing in the Commonwealth of Massachusetts to whom (a) SNHU sent a letter, substantially similar to the September 17, 2025 letter received by Plaintiff, representing that the person's student account would not be placed with a collection agency before a specified future date; and (b) Loan Science, LLC sent a collection communication, substantially similar to the September 25, 2025 letter received by Plaintiff, identifying itself as a debt collector and demanding payment, before the deadline stated in the SNHU letter. Plaintiff further defines a subclass of consumers who, like Plaintiff, had made voluntary payments to their SNHU student accounts within thirty days before the referral to Loan Science.

128.    On information and belief, the class is numerous. SNHU is one of the largest universities in the United States. Its pre-collection referral workflow is standardized and automated. The September 17 template letter and the Loan Science collection template are generated by systems that process student accounts in bulk. The number of Massachusetts residents subjected to this contradictory sequence over the life of the program is, on information and belief, in the hundreds or thousands.

129.    Common questions of law and fact predominate. The central questions - whether the September 17 template letter created a reasonable expectation of a collection-free grace period, whether Loan Science's letter contradicted that expectation, whether the contradiction constitutes an unfair or deceptive act under 93A, whether the workflow operated without individualized review of performance status, and whether SNHU is vicariously liable for its agent's conduct - are identical for every class member. Individual questions, if any, relate only to the amount of damages, not to liability.

130.    A class action is superior to individual actions. The amounts at stake for most individual class members are too small to justify individual litigation. Most class members do not know they have a claim. Without class treatment, SNHU's systemic practice will go unremediated and the full scope of the harm will never be addressed.

131.    **Fraudulent Concealment Tolling.** To the extent that any class member's claims would otherwise be barred by the applicable statute of limitations, Plaintiff invokes the doctrine of fraudulent concealment as established in *Puritan Medical Center, Inc. v. Cashman*, 413 Mass. 167 (1992), and *Koe v. Mercer*, 450 Mass. 97 (2007). The statute of limitations was tolled for each class member from the date of the initial violation until such time as the class member discovered, or through the exercise of reasonable diligence should have discovered, the unlawful nature of Defendants' conduct.

132.    Plaintiff seeks discovery, at the earliest practicable stage, of: (a) all versions of the September 17 template letter used by SNHU since the inception of the Loan Science partnership; (b) all referral data showing the dates on which student accounts were referred to Loan Science relative to the collection-placement deadlines stated in the corresponding SNHU letters and relative to the dates of any payments received by SNHU within thirty days before referral; (c) all consumer complaints received by SNHU or Loan Science regarding contradictory or confusing communications; (d) all internal communications regarding the design, review, or audit of the pre-collection referral workflow; (e) the total number of Massachusetts consumers subjected to the challenged practice, by year; (f) the contract between SNHU and Loan Science; (g) all communications between Loan Science Management, and SNHU regarding the workflow; and (h) all policies, procedures, training materials, and written standards governing the workflow.

## DAMAGES

133.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer damages, including without limitation economic damages, disgorgement, emotional distress (including that recoverable under M.G.L. c. 93A § 9 without a physical-manifestation requirement), invasion of privacy and dignitary harm, statutory damages under 15 U.S.C. § 1692k, multiple damages under M.G.L. c. 93A § 9(3) applied to the full base of actual damages including all disgorged payments, reasonable attorneys' fees and costs, pre-judgment and post-judgment interest, and class-wide statutory, actual, and multiple damages to the extent class claims are certified.

134.    Plaintiff is a person with documented preexisting stress-sensitive conditions. Under the eggshell-plaintiff doctrine, Defendants take Plaintiff as they found him. The extent of harm

need not have been foreseeable; the type of harm was foreseeable, and the rest follows as a matter of law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Harrison Copley Mayotte respectfully prays that this Court:

1. Enter judgment in his favor and against all Defendants on all counts;

2. Award statutory damages under 15 U.S.C. § 1692k for each separately pleaded FDCPA violation (Counts I through V, VII, and VIII);

3. Award actual damages against all Defendants in an amount to be proven at trial;

4. Award double or treble damages under M.G.L. c. 93A, § 9(3), based on willful and knowing violations;

5. Order disgorgement and return of the payments procured by deceptive practices;

6. Enter a declaratory judgment as described in Count XVI;

7. Award compensatory damages for invasion of privacy, and breach of contract;

8. Certify this action as a class action under Mass. R. Civ. P. 23 and award class-wide damages;

9. Award reasonable attorneys' fees and costs under 15 U.S.C. § 1692k(a)(3) and M.G.L. c. 93A, § 9(4);

10. Award pre-judgment and post-judgment interest at the statutory rate;

11. Grant such other and further relief as the Court deems just and proper.

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims and issues so triable.


Dated: May 1, 2026

Respectfully submitted,

/s/ Harrison C. Mayotte

_____

Harrison Copley Mayotte

*Plaintiff, pro se*

P.O. Box 6, Townsend, MA 01469

(street: 292 Main Street, Townsend, MA 01469)

+1 (202) 964-5870

snhulawsuit@harrisonmayotte.com

harrison@harrisonmayotte.com